IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESUS A. GARCIA,

    Plaintiff,

v.                                                                                                                                  No. 1:16-cv-01266 SCY

NANCY A. BERRYHILL,[1]
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION TO REMAND**

**THIS MATTER** is before the Court on Plaintiff Jesus Garcia's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff a period of disability and disability insurance benefits. Doc. 20. The Court concludes that the ALJ did not error in her Step 5 findings and, therefore, will DENY Plaintiff's motion.

**I.     BACKGROUND**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 13, 2013. Administrative Record ("AR") 520. He alleged a disability onset date of February 7, 2012. *Id*. After his claim was denied on initial review and upon reconsideration, her case was set for a hearing in front of an ALJ on March 10, 2015. *Id.* Plaintiff appeared in person at the hearing with his attorney. *Id*. The ALJ took testimony from Plaintiff and from an impartial Vocational Expert ("VE"), Sandra Fioretti. *Id*.; *see also* AR 533-559.

On April 23, 2015, the ALJ issued a written decision finding that Plaintiff was not

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

1

disabled within the meaning of the Social Security Act. AR 520-28. In arriving at her decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 7, 2012, his alleged onset date. AR 522. The ALJ then found that Plaintiff suffered from the following severe impairments: (1) spinal disorder including thoracic and lumbar spine strain sprain; (2) disorder of the left shoulder including rotator cuff tear, labrum fraying, and acromioclavicular arthritis; (3) disorder of the right hip; (4) osteoarthritis and probable right sacroiliac joint sprain; (5) diabetes; (6) high blood pressure; and (7) obesity. AR 522. The ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 523.

Because she found that Plaintiff's impairments did not meet a Listing, the ALJ then went on to assess Plaintiff's residual functional capacity ("RFC"). AR 523-27. The ALJ stated that

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; push/pull within the same weight limitations; stand/walk for four hours out of an eight hour workday, with no prolonged standing and walking greater than 30 minutes at a time; and sit for six hours out of an eight hour workday with the ability to stand and stretch not to exceed 10 percent of the day, in addition to normal breaks and lunches. The claimant is precluded from repetitive pushing, pulling, and lifting with the left upper extremity and right lower extremity; repetitive foot pedals with the right lower extremity; repetitive bending or stooping; running; jumping; ladders, ropes, and scaffolds; repetitive twisting; crawling; squatting; repetitive stair climbing; and work above or at shoulder level with the right upper extremity. Additionally, the claimant is limited to non-complex tasks because of pain and medication side effects.

AR 523. The ALJ concluded that Plaintiff had no past relevant work. AR 526. Based on the VE's Fioretti's testimony, the ALJ then determined at step five that considering Plaintiff's age, education, work experience, and her RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR 527-28.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. AR 1-6.

The Appeals Council ultimately denied Plaintiff's request for review. *Id*. This appeal followed. Doc.19.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Furthermore, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with

specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III. ANALYSIS

Plaintiff raises two arguments in his motion, both of which are directed at the ALJ's Step 5 findings. First, Plaintiff argues that the ALJ failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). Doc. 20 at 6-9. Second, Plaintiff contends that the ALJ, in determining that Plaintiff can perform jobs that exist in significant numbers in the national economy, did not conduct the analysis necessary under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). Doc. 20 at 10-11.

### A. The ALJ Appropriately Relied on the Vocational Expert to Resolve a Conflict Between Plaintiff's Residual Functional Capacity and the Dictionary of Occupational Titles Definition of Work the ALJ Found Plaintiff Could Perform

At the March 10, 2015 hearing, the ALJ elicited testimony from Vocational Expert Sandra Moore Fiorettie. AR 549. The ALJ noted that he had VE Fiorettie's resume in the file and Plaintiff, through her attorney, did not object to VE Fiorettie testifying as a vocational expert. AR 550. The ALJ further made sure that VE Fiorettie was familiar with the Dictionary of Occupational Titles and that she understood that, if her opinion conflicted with the DOT, she was required to advise the ALJ of that conflict and of the basis for her opinion. AR 449-50. Contrary to Plaintiff's argument, the Court finds that the VE fulfilled this requirement.

In response to the ALJ's hypothetical that incorporated the limitations he found Plaintiff to have, the VE testified that Plaintiff could perform the work of a products assembler I, a bench

assembler, and a toy assembler. AR 555-56. Plaintiff correctly points out that each of these jobs constitutes light work and that light work is defined as the ability to stand or walk off and on for a total of approximately 6 hours of an 8 hour workday. Doc. 20 at 8-9. But Plaintiff argues that the ALJ determined that Plaintiff could only stand or walk for four hours of an eight hour workday. Doc. 20 at 8-9. The VE, however, recognized that Plaintiff's limitations in "standing, walking, sitting, the posturals[,] and reaching anything" would prevent her from performing 90 percent of the positions available for the three jobs she identified. AR 555. Thus, the VE applied her expertise to set forth the number of positions in the national economy of these jobs that Plaintiff could perform, taking into consideration Plaintiff's specific limitations.

While unpublished, the Tenth Circuit's decision in *Rogers v. Astrue* provides persuasive guidance on this point. 312 Fed.Appx. 138, 141 (10th Cir. 2009). In *Rogers*, even though the ALJ provided an RFC that limited Plaintiff to sedentary work, three of the four jobs the VE identified as available to the claimant in the national economy constituted light jobs. *Id*. Further, the fourth job the VE identified normally required medium exertion. *Id*. Of these medium exertion jobs, however, the VE testified that 11,000 existed in the national economy that could be done at a sedentary level. *Id*. at 141-42. Based on this testimony, the Tenth Circuit rejected the plaintiff's argument that "the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirement" required remand. *Id*. at 142. Specifically, the Tenth Circuit stated that "the ALJ could rely on [the VE's] testimony as substantial evidence to support her determination of nondisability" and that "[p]roviding this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish." *Id.* at *4. Like *Rogers*, the Court concludes that in the present case the ALJ appropriately relied on the VE's testimony and expertise in concluding that ten percent of positions available in the work

the VE identified did not require an exertional level beyond that which the ALJ determined Plaintiff could perform.

### B. Substantial Evidence Supports the ALJ's Finding that Jobs Plaintiff Could Have Performed Existed in Significant Numbers in the National Economy

Plaintiff contends that "a total of 17,600 jobs available in the national economy does not rise to the significant level as defined in 42 U.S.C. § 423(d)(2)(A)." Doc. 20 at 11. Plaintiff argues that this number of jobs is "borderline" and therefore requires remand so that the Court can conduct the "more searching inquiry suggested by [*Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)] in doubtful cases." Doc. 20 at 10.

The Court first notes that Plaintiff's argument is premised on the Court adopting a factual finding the ALJ did not actually make. Plaintiff argues that if the Court were to divide the 17,600 jobs available in the national economy the ALJ found Plaintiff could perform by the number of states and territories of the United States, the number of jobs in the local economy would be approximately 325. Doc. 20 at 11. Plaintiff compares this number to the 850-1000 jobs in *Urioste v. Astrue*, which the Court found triggered a *Trimiar* analysis, in contending that the number of jobs in the present case is "borderline." 11-867, Doc. 23 at 19-20 (D.N.M. May 24, 2012). A finding of the number of regional jobs is not determined, however, by a simple division of the number of jobs existing in the national economy with the number of states and territories in the United States. It is instead premised on expert testimony a vocational expert provides. Here, there is no such finding because the vocational expert testified to the number of jobs existing in the national economy (*see* AR 555-56) and it is proper for the ALJ to solely consider the national figure in his or her determination pursuant to 42 U.S.C. § 423(d)(2)(a). *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (concluding that "the proper focus generally must be on jobs existing in the national, not regional, economy").

7

This distinction is significant because the *Trimiar* decision focused on jobs available in the regional economy. 966 F.2d at 1330. Accordingly, many of the *Trimiar* factors are specifically directed toward the analysis of jobs available in the regional economy such as "the distance that the claimant is capable of travelling to engage in the assigned work" and "the isolated nature of the jobs." *Id.* Such factors would appear to have little to no bearing on the analysis of nationally available jobs. Indeed, Magistrate Judge Molzen recently addressed the issue of whether the *Trimiar* analysis extended to the review of jobs available in the national economy. *King*, 2018 WL 851358 at *13. Judge Molzen stated that "'[t]he multi-factorial analysis required by *Trimiar* focuses on factors relevant in analyzing the true 'availability' of local job opportunities on a more particularized inquiry as to the specific claimant under consideration." *Id.* Thus, "[w]here the focus is on national availability of jobs…the particularized *Trimiar* inquiry would confuse the issues." *Id.* Judge Molzen therefore concluded that the "*Trimiar* analysis does not extend to the question of whether there are significant numbers of **nationally** available jobs." *Id.* (emphasis in original)); *see also Padilla v. Berryhill*, Civ. No. 16-106-KK, 2017 WL 3412089, *12 (D.N.M. March 28, 2017). The Court agrees with Magistrate Judge Molzen's analysis on this point. Because the issue before the Court does not involve a review of regionally available jobs, the Court rejects Plaintiff's specific contention that this case requires remand in order for the ALJ to conduct a *Trimiar* analysis.

The Court clarifies, however, that this does not mean that an ALJ's findings regarding the number of jobs existing in the national economy is beyond scrutiny. Rather, the issue remains as to whether the ALJ's finding is supported by substantial evidence. Such a determination may overlap with considerations laid out in *Trimiar*, such as the "reliability of the vocational expert's testimony." 966 F.2d at 1330. No such argument is before the Court, however. The Court rejects

8

Plaintiff's attempt to manufacture a *Trimiar* analysis regarding jobs available in the local economy by, with no legal support, simply dividing the number of jobs available in the national economy by the number of states and territories within the United States.

Moreover, even assuming Plaintiff preserved an argument that substantial evidence does not exist to support the ALJ's conclusion that 17,600 jobs are significant in the national economy, this argument would fail. Plaintiff did not challenge the vocational expert's qualifications below or on appeal. Further, the Court accepts the VE's representation that for the three jobs the ALJ identified, a total of 17,600 jobs exist in the national economy that someone with Plaintiff's limitations can perform. When generally addressing the process for determining whether a "significant number" of jobs exist (regardless of whether considering jobs available locally or nationally) the Tenth Circuit in *Trimiar* made clear that factual determinations such as whether the number of jobs is significant "should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular situation." 966 F.2d. at 1330 (quotation omitted). The ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy (AR 431, 432) and the Court does not now "presume to interpose [its] judgment for that of the ALJ." *Id*. at 1332. The Court concludes that substantial evidence supports the ALJ's determination on this point.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion to Remand to Agency (Doc. 20).

_____
UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**